**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 11-CR-0122-CVE** |
| | ) | **(13-CV-0312-CVE-FHM)** |
| **TRISTAN JON WILSON-CRISP,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Now before the Court are defendant Tristan Jon Wilson-Crisp's Motion under 28 U.S.C. §

2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Dkt. # 64),

Defendant's Motion Requesting In Camera Review of Grand Jury Minutes by the Court (Dkt. # 98),

Defendant's Motion Requesting an Evidentiary Hearing on Claim of Ineffective Assistance of

Counsel (Dkt. # 99), and Motion to Compel Judgement (Dkt. # 104). Defendant is a federal prisoner

appearing pro se. Section 2255 provides that "[a] prisoner in custody under sentence of a court

established by Act of Congress claiming the right to be released upon the ground that the sentence

was imposed in violation of the Constitution or law of the United States . . . may move the court

which imposed the sentence to vacate, set aside or correct the sentence."

**I.**

Defendant was convicted of two counts of obstructing, delaying, and affecting commerce

by robbery (18 U.S.C. § 1951) and two counts of using, carrying, and brandishing a firearm during

and in relation to a crime of violence (18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(1)(C)(i)[1]).  Dkt. # 63, at 1.  Defendant was sentenced to 384 months (32 years) of imprisonment.  Id. at 2.

On July 4, 2011, a suspect robbed a Whataburger restaurant located at 1432 South Peoria Avenue, Tulsa, Oklahoma.  Dkt. # 81, at 1.  The suspect brandished a handgun while doing so, and fled on foot.  Id.  Defendant, who matched the description of the suspect, was stopped on a walking trail near the business by two Tulsa Police officers.  Id. at 2.  Defendant was carrying two bags, which contained a handgun and the stolen money.  Id.  Whataburger employees identified the money and the money bag as items taken during the robbery.  Id.

During a videotaped interview, defendant confessed to the Whataburger robbery.  Id.  Defendant then confessed to five additional robberies.  Id. at 2-3.  One of those robberies was of a QuikTrip convenience store located at 1443 South Denver Avenue, Tulsa.  Id. at 3.

On August 1, 2011, a grand jury returned an indictment charging defendant with four counts of obstructing, delaying, and affecting commerce by robbery; four counts of using, carrying, and brandishing a firearm during a crime of violence; two counts of bank robbery; and one count of possessing an unregistered firearm.  Dkt. # 2.  Defendant made his initial appearance on August 11, 2011, and Selim K. Fiagome, an Assistant Federal Public Defender, was appointed to represent defendant.  Dkt. # 9.

On August 26, 2011, defendant filed a Motion to Determine Competency (Dkt. # 13).  On September 2, 2011, defendant was committed to the custody of the Attorney General for a psychiatric and/or psychological evaluation, and a competency hearing was set.  Dkt. # 18.

---

[1]   Defendant's indictment originally described count eleven as a violation of 18 U.S.C. § 924(c)(1)(C)(ii).  Dkt. # 2, at 12.  However, that charge was amended by interlineation to 18 U.S.C. § 924(c)(1)(C)(i).  Dkt. # 73, at 3.

Defendant was evaluated at the Federal Detention Center in Englewood, Colorado by Jeremiah Dwyer, Ph.D., a forensic psychologist.  Dkt. # 23.  A medical evaluation report was received on December 2, 2011.  Id.

According to the report, defendant "endorsed an extensive history of substance abuse."  Id. at 4.  Defendant "reported a significant mental health history."  Id. at 5.  He reported having experienced symptoms of depression, as well as two suicide attempts.  Id.  Defendant "reported a sudden onset of psychotic symptoms at age 21."  Id.  He "endorsed experiencing . . . auditory hallucinations, visual hallucinations, tactile hallucinations, olfactory hallucinations, and delusions – paranoid, thought insertion, thought stealing, mind reading, and receiving special messages from the television."  Id.  Some of his symptoms occurred only while under the influence of drugs, while others occurred both when he was and was not under the influence of drugs.  Id. at 6.  Defendant "denied receiving any mental health services of any type prior to his arrest . . . [including] mental health hospitalization, medications, outpatient therapy, or substance abuse treatment."  Id.[2] Defendant endorsed "a number of characteristics associated with certain personality difficulties, including antisocial, histrionic, and borderline traits."

During his evaluation, defendant was subjected to a number of tests.  The Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV) determined defendant's general cognitive ability to be in the average range.  Id. at 9.  Defendant's responses to the Minnesota Multiphasic Inventory, Second Edition, Restructured Format (MMPI-2-RF) resulted in an invalid profile.  Id.  Defendant responded to the test's inquiries "with excessive inconsistency, to the point the test cannot be

---

[2]      Defendant noted that he was prescribed Risperdal and Trazadone while in jail.  Dkt. # 23, at 6.  Those medications were discontinued prior to defendant's change of plea hearing.  Dkt. # 57, at 5; Dkt. # 64, at 19.

interpreted." <u>Id.</u> at 9-10.   "This degree of inconsistency may be the result of difficulty comprehending items, should there be evidence of significant impairment in reading ability or cognitive functioning.  When an individual's cognitive functioning is not significantly impaired, the most likely reason for this result is a non-cooperative test-taking style." <u>Id.</u> at 10.  Defendant's response style "was initially screened through the use of" the Structured Inventory of Malingered Symptomatology (SIMS) test.  <u>Id.</u>  Defendant's "responses on the SIMS were suggestive of exaggerating mental health symptoms in each assessed area [neurological impairment, affective disorders, psychosis, low intelligence, and amnestic disorders]." <u>Id.</u>  Defendant's "unusual psychological symptom report was also assessed for possible exaggeration through the use of [the Miller Forensic Assessment of Symptoms Test (M-FAST)]." <u>Id.</u> at 11.  Defendant's responses "were suggestive of possible exaggerating of mental health symptoms." <u>Id.</u>

The medical evaluation report diagnosed defendant with "Major Depressive Disorder, Recurrent, Mild, In Remission, Rule-Out Substance-Induced Psychotic Disorder,[3] Cannabis Abuse[4], By History (Controlled Environment); Alcohol Abuse, By History (Controlled Environment); Cocaine Abuse, By History (Controlled Environment); Amphetamine Abuse, By History (Controlled Environment); Hallucinogen Abuse, By History (Controlled Environment)." <u>Id.</u> (footnotes added). However, defendant was not "currently experiencing any major mood disturbances . . . or significant cognitive disturbances." <u>Id.</u>  There was significant evidence that defendant "was exaggerating at least some of his symptoms, to include symptoms associated with psychosis." <u>Id.</u> at 14.

---

[3]     A "rule-out" diagnosis is not formally assigned; it merely suggests that there "is sufficient information to consider the diagnosis in question."  Dkt. # 23, at 12.

[4]     The report acknowledges that "Substance Dependence" may be more appropriate than "Substance Abuse" for one or more of the drugs in question.  Dkt. # 23, at 15.

Additionally, a number of his reported symptoms were atypical in nature.  Id.  Additionally, defendant atypically "exhibited significant difficulty providing even a single specific example for many of [the bizarre delusions he] reported experiencing."  Id.  Defendant "endorsed many significant hallucinations and delusions, but denied any disorganized thinking, a hallmark feature of psychosis." Id. Defendant "at no point exhibited any unusual thinking process." Id. Defendant's presentation was also atypical in that he drew attention to his symptoms and denied ever receiving services, despite reporting symptomatology that "would generally require hospitalization."  Id. at 15.  The medical evaluation report noted that defendant's "competency to stand trial is not current [sic] impaired due to any significant mental health symptoms."  Id.

The report stated that defendant "demonstrated an adequate understanding of the nature and consequences of the court proceedings against him, and an adequate ability to cooperate and assist counsel in his defense."  Id. at 16.  Defendant was administered the MacArthur Competence Assessment Tool - Criminal Adjudication (Mac-CAT), and, on each of its three sections, received a perfect score and fell within the "Minimal/No Impairment" classification. Id. at 16-18. Defendant was also tested using portions of the Revised Competency Assessment Instrument (RCAI). Id. at 18. Defendant's responses to the RCAI exhibited "an overall adequate understanding of the criminal charges and related court proceedings." Id.

The report concluded that, overall, defendant's "formal responses to the competency-specific questions, his conduct during the formal evaluation sessions, and his overall functioning at this facility during the evaluation period revealed no evidence that he currently suffers from any significant mental health or cognitive deficit." Id. at 19. Defendant was "not currently experiencing the symptoms of a mental health issue that would significantly impact his competency to stand trial,

and his performance on all competency-related tasks did not reveal any significant deficit in competence-related abilities." Id. The report further stated that

> [b]ased on the information available, there is no objective evidence to indicate that [defendant] currently suffers from symptoms of a major mental disorder, such as an affective disorder (e.g., Bipolar Disorder), psychotic disorder, (e.g., Schizophrenia), or an organic disorder that would impair his present ability to understand the nature and consequences of the court proceedings against him, or his ability to properly assist counsel in his defense.

Id. at 19-20.

On December 9, 2011, a competency hearing was held, at which counsel for defendant was present, and counsel stipulated to the findings of the medical evaluation report. Dkt. #25. Magistrate Judge Paul J. Cleary found defendant competent to stand trial. Dkt. ## 25, 26.

On December 20, 2011, Stephen J. Greubel, an Assistant Federal Public Defender, entered an appearance on behalf of defendant. Dkt. # 28. On December 27, 2011, a Motion to Suppress Statements (Dkt. # 29), Defendant's Motion to Suppress Identification and Brief in Support (Dkt. # 30), and a Notice of Insanity Defense (Dkt. # 31) were filed. On January 9, 2012, Fiagome withdrew from the case, and the Court appointed Stephen J. Knorr, a Criminal Justice Act panel attorney, to represent defendant. Dkt. # 35.[5] On January 11, 2012, a Notice of Insanity Defense was filed by Knorr. Dkt. # 36. Knorr also arranged for a psychologist to investigate the feasibility of an insanity defense. See Dkt. ## 40, 42, 43, 44.

On February 23, 2012, defendant filed a motion to withdraw defendant's motion to suppress statements and motion to suppress identification. Dkt. # 45. Defendant sought to withdraw the

---

[5]     Greubel, who had previously entered an appearance, did not formally withdraw from the case at that time. See Dkt. # 35. However, there is no evidence that Greubel was further involved in the case after Fiagome withdrew.

motion to suppress statements because the government had represented to defendant that it would not introduce the statements defendant was seeking to suppress. Id. at 1-2. The motion also stated that defendant had authorized Knorr to withdraw the motion to suppress identification. Id. at 3. The motion was granted. Dkt. # 47.

A change of plea hearing was set for March 26, 2012. Dkt. # 52. Before the change of plea hearing, defendant completed a petition to enter plea of guilty (Dkt. # 57) with the assistance of his attorney. In the petition, defendant stated:

> On October 20, 2009, I robbed the Quiktrip store at 1443 South Denver, Tulsa, Oklahoma, using a handgun. I took money from the store by telling the employee to give me money from the register. On that same day and during the Quiktrip robbery, I brandished a firearm while committing the robbery. On July 4, 2011, I robbed the Whataburger restaurant at 1432 South Peoria Avenue in Tulsa, Oklahoma, using a firearm. I took money from the store by telling employees to give me money from the register and the safe. During the Whataburger robbery, I possessed[6] a firearm in order to commit the robbery. Both robberies affected interstate commerce and both occurred within the Northern District of Oklahoma.

Dkt. # 57, at 3. The petition also states that:

---

[6]    Defendant was charged with brandishing a firearm during the Whataburger robbery. Dkt. # 2, at 12. In his plea agreement, defendant admitted to brandishing a firearm during the Whataburger robbery. Dkt. # 59, at 7. However, in his petition to enter a plea of guilty, defendant stated only that he possessed a firearm while committing the robbery. Dkt. # 57, at 3. At the change of plea hearing, Knorr stated that he did not believe defendant had brandished a firearm while committing the Whataburger robbery. Dkt. # 73, at 5. Joel-lyn McCormick, Assistant United States Attorney, maintained that defendant had brandished a firearm. Id. However, because it would not have any impact on sentencing under 18 U.S.C. § 924(c)(1)(C)(i) -- as either possessing or brandishing a firearm during the Whataburger robbery would constitute a second conviction because of his plea of guilty to brandishing a firearm during the QuikTrip robbery -- McCormick did not object to defendant allocuting to possessing the firearm during the second robbery. Id. at 5-6; see also 18 U.S.C. § 924(c)(1)(A) (criminalizing possessing a firearm in furtherance of a crime of violence); 18 U.S.C. § 924(c)(1)(C) ("In the case of a second or subsequent conviction under this subsection, the person shall– (i) be sentenced to a term of imprisonment of not less than 25 years . . . .").

> Mr. Knorr has advised me of what charges are presently pending, what other potential charges might be brought against me, what the evidence is, what possible defenses I might have at trial, the possible options of going to trial or pleading guilty, the possible consequences attached to each option, and an estimate of the impact of the advisory sentencing guidelines on my case.  Mr. Knorr has advised me of the terms and conditions of the plea agreement that has been reached.

Id.  The petition further states that defendant "believe[d] that [his] attorney has done all that any attorney could do to counsel and assist me, AND I AM SATISFIED WITH THE ADVICE AND HELP HE HAS GIVEN ME."  Id. at 5.  Additionally, the defendant states within his petition that:

> My mind is clear.  I am not under the influence of alcohol or drugs, and I am not under a doctor's care.  The only drugs, medicine or pills that I have taken within the past 7 (seven) days are: None.
>
> I have never been confined in an institution for the treatment of a mental illness.  I have never been adjudicated mentally incompetent.  No psychiatrist, physician or psychologist has ever found me to be mentally ill although I have been found to have suffered from depression and polysubstance abuse.. [sic] I know of no reason why my mental competence at the time of the commission of the alleged offense, or at the present time, should be questioned.
>
> I offer my plea of "GUILTY" freely and voluntarily, and further state that my plea of "GUILTY" is not the result of any force or threats against me, or of any promises made other than those set forth in this petition.  I offer my plea of GUILTY with a full understanding of all matters set forth in the Indictment and in this petition . . . .

Id. at 5-6.

A plea agreement was entered into between defendant and the United States of America. Dkt. # 59.  In that agreement, defendant stated that he had "read the agreement and carefully reviewed every part of it with [his] attorney."  Id. at 17.  He stated that he understood it and voluntarily agreed to it.  Id.  He stated that no one threatened or forced him to enter into the agreement and that he was "satisfied with the representation of [his] attorney in this matter."  Id.

In the plea agreement, defendant agreed to plead guilty to the following counts in the indictment: count one, robbery of the QuikTrip, 18 U.S.C. § 1951; count two, brandishing a firearm

8

during the QuikTrip robbery, 18 U.S.C. § 924(c)(1)(A)(ii); count ten, robbery of the Whataburger, 18 U.S.C. § 1951; and count eleven, brandishing a firearm during the Whataburger robbery, 18 U.S.C. §§ 924(c)(1)(A)(ii)[7], 924(c)(1)(C)(i).[8] Dkt. # 59, at 1-2.  In exchange, the government agreed to dismiss the remaining counts and to not initiate any further prosecution.  Id. at 8-9.  Defendant agreed to waive his right to directly appeal his sentence, except for disputed sentencing issues and from a sentence that exceeded the statutory maximum.  Id. at 3.  He also agreed to waive his right to collaterally attack his conviction and sentence, "except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver."  Id.  "The defendant expressly acknowledges that counsel has explained his appellate and post-conviction rights; that defendant understands his rights; and that defendant knowingly and voluntarily waives those rights . . . ."  Id. at 4.  The agreement iterated the elements of 18 U.S.C. § 1951 and 18 U.S.C. § 924(c)(1)(A)(ii).  Id. at 6.  Defendant agreed and stipulated that "there is a factual basis for the plea of guilty."  Id. at 7.  Defendant admitted to "knowingly, willfully and intentionally committing or causing to be committed the acts constituting the crimes alleged in Counts 1,2,10 and 11 in the

---

[7]     As discussed supra n.6, while defendant stated in his plea agreement that he brandished a weapon, at his change of plea hearing he would allocate only to possessing the firearm.  See Dkt. # 59, at 2, 7; Dkt. # 73, at 25.  As discussed supra n.6, this change was agreed to by the government and had no impact on sentencing.  See Dkt. # 73, at 5-6; 18 U.S.C. § 924(c)(1)(A) (criminalizing possessing a firearm in furtherance of a crime of violence); 18 U.S.C. § 924(c)(1)(C) ("In the case of a second or subsequent conviction under this subsection, the person shall– (i) be sentenced to a term of imprisonment of not less than 25 years . . . .").

[8]     Due to a scrivener's error the plea agreement incorrectly describes count eleven as a violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(1)(B)(ii) instead of 18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(1)(C)(i).  Dkt. # 59, at 2.

instant case, and confesses to the Court that the defendant is, in fact, guilty of such crimes." Id.

Additionally, defendant admitted that:

> On October 20, 2009, while in the Northern District of Oklahoma, I, Tristan Jon Wilson-Crisp entered into the Quiktrip store, located at 1443 South Denver, Tulsa, Oklahoma, at which time, I used and brandished a firearm to threaten and intimidate a Quiktrip employee as I demanded money. In response to my demands, the employee gave me money which belonged to Quiktrip. I understand that Quiktrip is a business that sells food, gasoline, medicines and various other items that have been transported through interstate commence [sic]. I obstructed Quiktrip's ability to conduct business by committing the herein described robbery. As a result of the robbery that I committed, Quiktrip was not open for business for a period of time which affected interstate commerce.
>
> Additionally, on July 4, 2011, while in the Northern District of Oklahoma, I entered into the Whataburger restaurant, located at 1432 South Peoria, Tulsa, Oklahoma, and proceeded to make contact with employees. I then demanded that the employees give me money from the cash register and safe. In response to my demands, the employees gave me money which belonged to Whataburger. While committing the robbery, I used and brandished a firearm in order to force employees to comply with my demands. I understand that Whataburger is a business that sells items which have been transported through interstate commence [sic]. I obstructed Whataburger's ability to conduct business by committing the herein described robbery. As a result of the robbery that I committed, Whataburger was not open for business for a period of time which further affected interstate commerce.

Id. at 7-8.

During the change of plea hearing, defendant answered questions to help determine whether he was competent:

THE COURT:        Have you been treated recently for any mental illness of any kind?

THE DEFENDANT:  No.

THE COURT:        Have you been treated recently for addiction to narcotic drugs of any kind?

THE DEFENDANT:  No, ma'am.

>THE COURT:        Are you currently under the influence of any drug, medication or alcoholic beverage of any kind?
>
>THE DEFENDANT:  No, ma'am.

Dkt. # 73, at 8.  Defendant also stated that his petition was true, correct, and complete:

>THE COURT:        Mr. Wilson-Crisp, there's another document in from of you that was completed by Mr. Knorr that's entitled Petition to Enter Plea of Guilty.  Have you had a chance to review that document?
>
>THE DEFENDANT:  Yes, ma'am.
>
>THE COURT:        Are your representations in that document true, correct, and complete?
>
>THE DEFENDANT:  Yes, ma'am.

Id. at 21.  The Court explained to defendant the elements of each of the crimes to which he was

pleading guilty.  Id. at 23-24.  Defendant also admitted that he committed each of the crimes:

>THE DEFENDANT:  On October 20th, 2009, I robbed the QuikTrip store at 1443 South Denver in Tulsa, Oklahoma, using a handgun.  I took money from the store by telling the employees to give me money from the register.  On the same day and during the QuikTrip robbery, I brandished a firearm while committing the robbery.
>
>On July 4, 2011, I robbed the Whataburger restaurant at 1432 South Peoria Avenue in Tulsa, Oklahoma, using a firearm.  I took money from the store by telling the employees to give me money from the register and safe.  During the Whataburger robbery, I possessed a firearm in order to commit the robbery.  Both robberies affected interstate commerce and both occurred within the Northern District of Oklahoma.

Id. at 24-25.  Defendant admitted that his pleas of guilty were voluntary and made of his own free

will.  Id. at 27.  Defendant stated that he was satisfied with Knorr:

11

> THE COURT:             Have you fully discussed those charges and the case in general with Mr. Knorr as your counsel?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT:             Are you fully satisfied with the counsel, representation and advice given to you in this case by your attorney, Mr. Knorr?
>
> THE DEFENDANT: Yes, ma'am.

Id. at 8-9.  Following the change of plea colloquy, the following findings were made:

> THE COURT:             It is the finding of the court in the case of United States v. Tristan Jon Wilson-Crisp, based upon defendant's admissions, demeanor and responsive answers to my questions, that the defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offenses.

Id. at 27.   The plea was accepted and defendant was adjudged guilty of counts one, two, ten, and eleven of the indictment.  Id.

On July 9, 2012, defendant was sentenced to a total term of 384 months (32 years).[9]  Dkt. # 61, at 2.  He was sentenced to a term of zero months as to count one, the QuikTrip robbery, and as to count ten, the Whataburger robbery.  Id.  As to count two, he was sentenced to the mandatory minimum sentence of 84 months (7 years) for brandishing a firearm during the QuikTrip robbery.  Id.  As to count eleven, he was sentenced to the mandatory minimum sentence of 300 months (25 years), to run consecutively to count two, for possessing a firearm during the Whataburger robbery, his second conviction under 18 U.S.C. § 924(c)(1).  Id.  The sentence for count eleven was required

---

[9]     While the statutes specify sentences in years, the sentencing guidelines specify sentences in months.

12

by statute to run consecutively to the sentence for count two.  See 18 U.S.C. § 924(c)(1)(D)(ii).  At

defendant's sentencing hearing, Knorr stated that defendant

> has a history of mental illness[10] that's been discovered since he's been arrested
> through two different diagnoses, and they have gone untreated until the time of his
> arrest.  And, even then, it wasn't so much treatment as diagnosis . . . He was placed
> on medication for a while.  He's not on medication now, and I don't see that he needs
> medication at this point, but that could change over time.

Dkt. # 74, at 5 (footnote added).  Knorr also opined that, regarding some of charges to which

defendant pled guilty, "looking over the reports I don't know that those would ever have been tied

back to him or they could ever have been able to prove those," absent defendant's confession.  Id.

at 5-6.  Judgment (Dkt. # 63) was entered on July 12, 2012.

Defendant did not appeal his conviction or sentence.  See Dkt. # 64, at 2.  On May 28, 2013,

he filed his § 2255 motion, a motion requesting transcripts, and a motion to proceed in forma

pauperis.  Dkt. ## 64, 66, 67.  The Court granted defendant's motion to proceed in forma pauperis

(Dkt. # 69) and directed the government to respond to defendant's motion for transcripts (Dkt. # 70).

The government opposed defendant's motion for transcripts (Dkt. # 71), but the Court granted it and

directed the court reporter to prepare the transcripts at the government's expense (Dkt. # 72).

In his § 2255 motion, defendant raised four claims for relief.  Dkt. # 64.  First, defendant

claimed that his guilty plea was not knowing and voluntary and that there was a flaw in his plea

colloquy.  Id. at 4.  Second, defendant asserted that Knorr provided ineffective assistance of counsel

by failing to investigate.  Id. at 5-6.  Third, defendant stated that Knorr was ineffective because he

failed to pursue substantial evidence of defendant's innocence.  Id. at 8.  Fourth, defendant argued

that he received ineffective assistance of counsel because Knorr withdrew motions without

---

[10]     This use of the phrase "mental illness" by Knorr is discussed in n.30, infra.

consulting defendant. Id. at 9-10. Defendant also requested that counsel be appointed to represent him. Id. at 13.

On June 21, 2013, defendant filed a supplement, which did not assert any additional claims but, instead, stated that a recently released opinion, Alleyne v. United States, 133 S. Ct. 2151 (2013), related to his case. Dkt. # 77.[11] On July 15, 2013, defendant filed a motion to file a second supplement[12] (Dkt. # 82) and a second supplement (Dkt. # 83). In that supplement, defendant states that he was suffering from a severe mental illness at the time of his guilty plea. Dkt. # 83 at 4. Defendant further argues that Knorr was ineffective for several reasons, including that Knorr did not inform the Court that defendant provided a false statement under oath and because Knorr persuaded defendant to plead guilty. Id. Defendant also states that Knorr failed to investigate defendant's case, including the fact that one charge in a prior state case involving the same activity was dismissed because a prosecution witness failed to appear, and that there was no evidence linking defendant to the crimes. Id. The United States has filed a response (Dkt. # 81), which contains an affidavit from Knorr (Dkt. # 81-1).[13]

On August 29, 2013, defendant filed his motion requesting in camera review of the grand jury minutes by this Court (Dkt. # 98) and a motion requesting an evidentiary hearing (Dkt. # 99). In his motion requesting an in camera review of the grand jury minutes, defendant argues that

---

[11]     Alleyne held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013). As defendant waived his right to a jury trial by pleading guilty and admitted to facts that, by law, increase the penalty for his crimes, Alleyne is inapposite. Dkt. # 59, at 2, 7.

[12]     Defendant's motion was later granted. Dkt. # 86.

[13]     This Court had previously entered an order finding that defendant had waived his attorney-client privilege. Dkt. # 76.

insufficient evidence may have been presented to the grand jury to support some of the charges in defendant's indictment. Dkt. # 98, at 2-3. In his motion requesting an evidentiary hearing, defendant argues that factual disputes concerning his counsel's alleged ineffective assistance exist, that an evidentiary hearing should be held to resolve those disputes, and that counsel should be appointed to represent defendant. Dkt. # 98. On February 27, 2014, defendant filed a motion to compel judgment, which requested that this Court enter a final judgment. Dkt. # 104.

## II.

The Court is aware that defendant is not represented by an attorney and, consistent with Supreme Court and Tenth Circuit precedent, the Court will construe defendant's pro se pleadings liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); Gaines v. Stenseng, 292 F.3d 1222, 1224 (10th Cir. 2002).

Defendants are generally barred from raising alleged errors for the first time on collateral review, unless a defendant "can show both cause for the default and actual prejudice." United States v. Wiseman, 297 F.3d 975, 979 (10th Cir. 2002).[14] Although the government has not raised the procedural bar in this case, this Court may raise it sua sponte. Whether this Court should do so depends on a variety of factors, including the interests of judicial efficiency, finality, the prompt and orderly administration of justice, and the conservation of scarce judicial resources. Id. at 979-80. "Raising and enforcing the procedural bar sua sponte advances the interest in finality and

---

[14]   Alternatively, the procedural bar will not apply if its application would result in a fundamental miscarriage of justice or if "the constitutional error 'has probably resulted in the conviction of one who is actually innocent.'" Wiseman, 297 F.3d at 979 (quoting Bousley v. United States, 523 US. 614, 623-24 (1998)); see also Nguyen v. Reynolds, 131 F.3d 1340, 1346 (10th Cir. 1997) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)).

encourages efficiency by requiring a defendant to present issues on direct appeal rather than in a collateral attack." Id. at 980.  However, in this case, those interests are outweighed by other factors. The government's failure "to assert the procedural bar defense weighs heavily against its *sua sponte* enforcement." Id.  Additionally, because defendant would have to be afforded the opportunity to file a supplemental brief on the issue, resolution of the procedural bar issue would delay the resolution of defendant's § 2255 motion and would not serve the interests of judicial efficiency or the prompt and orderly administration of justice. Id.  This Court declines to raise and enforce the procedural bar sua sponte.

Defendant's plea agreement contains a waiver of his "right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver . . . ." Dkt. # 59, at 3.  Some of defendant's claims appear to fall within this waiver.  However, the government has not filed a motion to enforce the waiver or sought to enforce the waiver in its response to defendant's motion.  See Dkt. # 81.  "[B]ecause the government has not sought to enforce the collateral-attack waiver, it has forfeited its ability to do so." United States v. Abston, 401 F. App'x 357, 365 n.4 (10th Cir. 2010);[15] see also United States v. Calderon, 428 F.3d 928, 931 (10th Cir. 2005) (refusing to enforce an appellate waiver where the government had not sought its enforcement).

---

[15]     This and all other unpublished opinions are not precedential but are cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

16

**A.  Defendant's Plea Was Both Knowing and Voluntary**

Defendant argues that his guilty plea was involuntarily and unknowingly made.  Dkt. # 64, at 4.  He argues that he did not "receive a proper firm explanation of the nature and elements of the offense" and that he "was not sufficiently informed, as to the consequences of his plea."  Id.  He also argues that Knorr made false promises as to the sentence he would receive.  Id.  He argues that Knorr coerced him into signing the plea agreement and that he had no idea what he was doing.  Id. at 21.  Defendant argues that he did not understand that, by pleading guilty, he was waiving his right to appeal his sentence or his post-conviction rights.  Id. at 22.  He argues that he did not know that he was pleading guilty to the QuikTrip robbery.  Id.

Defendant's arguments are belied by the record.  His argument that he "had absolutely no idea what [he] was doing" (Dkt. # 63, at 21) is contradicted by his plea agreement (Dkt. # 59), his petition to enter a plea of guilty (Dkt. # 57), and his plea colloquy during his change of plea hearing (Dkt. # 73).  As further discussed infra, defendant fully understood the purpose and consequences of his plea agreement.

Defendant understood the nature and elements of the offenses with which he was charged.  At the plea hearing, defendant was given an explanation of the nature and elements of the offenses to which he was pleading guilty:

> THE COURT:   All right.  Now I want to advise you of the charges to which you would be pleading guilty.  They are the charges in Counts One, Two, Ten and Eleven in the indictment, wherein the grand jury charges that, in Count One, on or about October 20th, 2009, in the Northern District of Oklahoma, you did knowingly, willfully and intentionally obstruct, delay and affect interstate commerce and the movement of articles and commodities in commerce of QuikTrip convenience store located at 1443 South Denver, Tulsa, Oklahoma, a company that conducted and conducts business in interstate commerce,

17

by robbery, in that you unlawfully took and obtained personal property consisting of money from the presence of a QuikTrip employee against the employee's will by means of actual and threatened force, violence, and fear of injury, immediate and future, to the employee's person.  All in violation of Title 18, United States Code, Section 1951.

In Count Two, that on or about October 20th, 2009, in the Northern District of Oklahoma, you did unlawfully and knowingly use, brandish and carry a firearm during and in relation to a crime of violence for which you may be prosecuted in a court of the United States, to wit: obstruct, delay and affect commerce by robbery, a violation of Title 18, United States Code, Section 1951, as more fully set forth in Count One of the indictment.  All in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii).

In Count Ten, on or about July 4, 2011, in the Northern District of Oklahoma, you did knowingly, willfully and intentionally obstruct, delay and affect interstate commerce and the movement of articles and commodities in such commerce of Whataburger located on 1432 South Peoria Avenue, Tulsa, Oklahoma, a company that conducted and conducts business in interstate commerce, by robbery, in that you unlawfully took and obtained personal property consisting of money from the presence of a Whataburger employee, against the employee's will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to the employee's person.  All in violation of Title 18, United States Code, Section 1951.

And in Count Eleven, on or about July 4, 2011, in the Northern District of Oklahoma, you did unlawfully and knowingly use, brandish and carry a firearm, to wit: one Bryco Jennings nine millimeter caliber pistol bearing serial number 795411 during and in relation to a crime of violence for which you may be prosecuted in a court of the Untied States, to wit: obstruct, delay and affect commerce by robbery, a violation of Title 18, United States Code, Section 1951, as more fully set forth in Count Ten of this indictment. All in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii) and 924(c)(1)(C)(i).

18

Do you understand that those are the charges to which you would plead guilty?

THE DEFENDANT:  Yes, ma'am.

THE COURT:          In order to prevail against you at trial, the United States would be required to prove that on or about -- in Count One, on or about October 20th, 2009, in the Northern District of Oklahoma, you obtained property from another without that person's consent, that you did so by wrongful use of actual or threatened force, violence or fear, and that as a result of your actions, interstate commerce or an item moving in interstate commerce was actually or potentially delayed, obstructed, or affected in any way or degree.

And then, also, as to Count Eleven -- excuse me, as to Count Ten, those would be the same elements except it would be July 4, 2011, in the Northern District of Oklahoma, relating to the Whataburger.

As to Count Two, on or about October 20, 2009, in the Northern District of Oklahoma, you committed the crime of robbery as charged in Count One of the indictment, that you used or carried or brandished a firearm during and in relation to that robbery.

And in Count Eleven, it would be on or about July 4, 2011, in the Northern District of Oklahoma, you committed the crime of robbery as charged in Count Ten of the indictment in that you used or carried or brandished a firearm during and in relation to a robbery.

Do you understand that that's what the United States would be required to prove?

THE DEFENDANT:  Yes, ma'am.

Dkt. # 73, at 21-24.  In his petition to enter his plea of guilty, defendant stated that he fully

understood the charges against him and that his attorney counseled and advised him on the nature

19

of each charge.  Dkt. # 57, at 1.  Additionally, defendant's plea agreement listed the elements of the offenses and the factual basis for the plea of guilty.  Dkt. # 59, at 6-7.[16]

Defendant also knew the consequences of his plea.  His plea agreement explained the waiver of his constitutional rights, his appellate and post-conviction waiver, his freedom of information act waiver, his Rule 11 rights waiver, his waiver of his right to a jury trial on sentencing factors, the possibility of monetary penalties, his special assessment, his potential sentence, his potential term of supervised release, the existence of sentencing guidelines, the plea agreement's stipulations, the limitations of the plea agreement, and the consequences of breaching the agreement. Id. at 2-6, 10-15.  His petition to enter a plea of guilty explained his waiver of constitutional rights, his potential sentence, fine, special assessment, and term of supervised release, the sentencing process, and the potential consequences of a waiver of appellate and post-conviction rights.  Dkt. # 57, at 2, 4, 6-7.  He also states in his petition that his attorney explained the possible consequences of his plea to him. Id. at 3.  During his change of plea hearing, the key terms of the plea agreement were disclosed. Dkt. # 73, at 6-7.  Defendant admitted that he understood the terms of the plea agreement. Id. at 9-10.  Additionally, the Court explained defendant's possible sentence, fine, special assessment, and term of supervised release; the sentencing process; defendant's appellate and post-conviction waiver; defendant's waiver of his rights; and the plea agreement's stipulations. Id. at 11-20, 26.

---

[16]      Knorr also states that he discussed the elements of the offenses with defendant.  Dkt. # 81-1, at 2.  While the Court acknowledges that defendant states Knorr never did so (see Dkt. # 97, at 5), defendant's position is belied by the record. See e.g., Dkt. # 57, at 1 ("My attorney has counseled and advised me on the nature of each charge . . . ."); Dkt. # 59, at 6, 17 (including both the elements of the charged offenses and a statement by defendant that he has "read this agreement and carefully reviewed every part of it with [his] attorney"); Dkt. # 73, at 8-9 (affirming that defendant fully discussed the charges against him and the plea agreement, which listed the elements of the charged offenses, with Knorr).

Defendant states that he was coerced by his counsel into signing the plea agreement -- although he offers no explanation as to how he was coerced -- and that Knorr made false promises as to the sentence he would receive in exchange for a guilty plea.[17]  These unsupported allegations are contradicted by defendant's testimony:

> THE COURT:          Has anyone made any other or different promise or assurance
>                     of any kind to you in an effort to induce you to plead guilty?
>
> THE DEFENDANT:  No, ma'am.
>
> THE COURT:          Are you pleading guilty of your own free will because you are
>                     guilty?
>
> THE DEFENDANT:   Yes, ma'am.
>
>                          .   .   .
>
> THE COURT:          Are your pleas of guilty and the waivers of your rights made
>                     voluntarily and completely of your own free choice?
>
> THE DEFENDANT:  Yes, ma'am.

Dkt. # 73, at 10, 27.  Defendant also denied, in the plea agreement itself, that any promises had been made or that any coercion occurred.  See Dkt. # 59, at 17 ("I have read this agreement . . . and I voluntarily agree to it. . . . No other promises or inducements have been made to me, other than those contained in the pleading.  In addition, no one has threatened or forced me in any way to enter into this agreement.").  Additionally, defendant's petition to enter a plea of guilty states: "I offer my plea of 'GUILTY' freely and voluntarily, and further state that my plea of 'GUILTY' is not the result of any force or threats against me, or of any promises made other than those set forth in this petition."  Dkt. # 57, at 5.  Defendant's allegation of coercion is not supported by the record and

---

[17]     Knorr denies making any promises as to the sentence defendant would receive.  Dkt. # 81-1, at 2.

defendant has offered no details about the alleged coercion or any material to substantiate it.  If defendant felt that he was being coerced, he should have stated so at the change of plea hearing. United States v. Jones, 168 F.3d 1217, 1220 (10th Cir. 1999).  After freely and voluntarily pleading guilty, he cannot now complain that he did so under duress.  Id.

Any argument that defendant did not understand his potential sentence or the sentencing process is also unsupported by the record.  As noted supra, the process for determining his sentence was fully explained to defendant.  Likewise, defendant was informed of his potential sentence.  At defendant's change of plea hearing, defendant was told that he faced a mandatory minimum sentence of thirty-two years, a mandatory special assessment of $400, and a term of supervised release of up to five years.  Dkt. # 73, at 11-12.  Defendant's plea agreement also explained that defendant faced a mandatory minimum sentence of thirty-two years, a term of supervised release of up to five years, and a mandatory $400 special assessment.  Dkt. # 59, at 6, 10-11.[18]  Additionally, defendant's petition to enter a plea of guilty explained that defendant faced a mandatory minimum sentence of thirty-two years, that a special assessment of $400 would be imposed, that a term of supervised release of five years "may/must be imposed, " and that restitution may be imposed.   Dkt. # 57, at

---

[18]     The plea agreement also contained a stipulation that defendant should be sentenced "at the high end of the guidelines range of 51-63 months" for counts one and ten.  Dkt. # 59, at 14. Defendant was ultimately sentenced to zero months as to counts one and ten (Dkt. # 74, at 11), resulting in defendant receiving a lesser sentence than the plea agreement suggested.

4-5.[19]  Defendant knew, despite any alleged promises made by Knorr, that he would be sentenced to at least thirty-two years in prison and receive at least a $400 special assessment and that the possibility of restitution and a term of supervised release existed.

Defendant knew that, by pleading guilty, he was waiving his appellate and post-conviction rights.  At defendant's plea hearing, the Court reviewed the appellate and post-conviction waiver with defendant in detail:

> THE COURT:    Do you understand that in your written plea agreement there is a waiver of certain appellate and post-conviction rights?
>
> THE DEFENDANT:  Yes, ma'am.
>
> THE COURT:    And I have an obligation to review that with you. Do you understand that in consideration of the promises and concessions made by the United States in your written plea agreement, you are knowingly and voluntarily agreeing to waive the right to directly appeal your conviction and sentence pursuant to 28, U.S.C., Section 1291, and/or 18, U.S.C., Section 3742(a), except for disputed sentencing issues and you reserve the right to appeal from a sentence which exceeds the statutory maximum?  Do you understand that?
>
> THE DEFENDANT:  Yes, ma'am.

.   .   .

---

[19]    Knorr also states that he discussed the sentencing process and defendant's possible sentence with defendant.  Dkt. # 81-1, at 2.  While the Court acknowledges that defendant states Knorr never did so (see  Dkt. # 97, at 5), defendant's position is belied by the record.  See e.g., Dkt. # 57, at 3 ("Mr. Knorr advised me of . . . the possible options of going to trial or pleading guilty, the possible consequences attached to each option, and an estimate of the impact of the advisory sentencing guidelines on my case."); Dkt. # 59, at 10, 17 (including an explanation of defendant's possible sentence, an explanation of the sentencing guidelines, and a statement by defendant that he has "read this agreement and carefully reviewed every part of it with [his] attorney"); Dkt. # 73, at 8-9 (affirming that defendant fully discussed the charges against him and the plea agreement, which contains a discussion of the sentencing process and explanation of defendant's possible sentence, with Knorr).

> THE COURT:        Do you understand that you are knowingly and voluntarily agreeing to waive the right to collaterally attack your conviction and sentence pursuant to 28, U.S.C., Section 2255, except for claims based on ineffective assistance of counsel which challenge the validity of your guilty plea or your waiver of appellate and post-conviction rights contained in your written plea agreement?
>
> THE DEFENDANT:  Yes, ma'am.
>
> .   .   .
>
> THE COURT:        Do you understand that you are expressly acknowledging that Mr. Knorr has explained your appellate and post-conviction rights, that you understand those rights, and that you are knowingly and voluntarily waiving those rights as set forth in your written plea agreement?
>
> THE DEFENDANT:  Yes, ma'am.

Dkt. # 73, at 16-17.  Defendant's plea agreement clearly explains defendant's waiver of his appellate and post-conviction rights.  Dkt. # 59, at 3.  Additionally, defendant's petition to enter a plea of guilty states that "if applicable, subject to any waiver of my appellate and post-conviction rights contained in a written plea agreement, I have the right of appeal of any sentence imposed by the Court to the 10th Circuit Court of Appeals."  Dkt. # 57, at 7.

Defendant knew that he was pleading guilty to the QuikTrip robbery.  As to the Quiktrip robbery, in his petition to enter a plea of guilty, defendant stated that:

> On October 20, 2009, I robbed the Quiktrip store at 1443 South Denver, Tulsa, Oklahoma, using a handgun.  I took money from the store by telling the employee to give me money from the register.  On that same day and during the Quiktrip robbery, I brandished a firearm while committing the robbery.

Dkt. # 57, at 3.  He stated that he wished to plead guilty to counts one, two, ten, and eleven of the indictment, which includes the two counts dealing with the QuikTrip robbery.  Id. at 3-4; Dkt. # 2, at 1-3. Defendant's plea agreement also stated that he was entering pleas of guilty to counts one and

24

two of the indictment (the QuikTrip robbery counts).  Dkt. # 59, at 1; Dkt. # 2, at 1-3.  At his change

of plea hearing, defendant was specifically asked if he wished to plead guilty to counts one and two

of the indictment, and defendant plead guilty to those two counts.  Dkt. # 73, at 26.  In the plea

agreement, defendant offered that:

> On October 20, 2009, while in the Northern District of Oklahoma, I, Tristan Jon
> Wilson-Crisp entered into the Quiktrip store, located at 1443 South Denver, Tulsa,
> Oklahoma, at which time, I used and brandished a firearm to threaten and intimidate
> a Quiktrip employee as I demanded money.  In response to my demands, the
> employee gave me money which belonged to Quiktrip.  I understand that Quiktrip
> is a business that sells food, gasoline, medicines and various other items that have
> been transported through interstate commence. [sic] I obstructed Quiktrip's ability
> to conduct business by committing the herein described robbery.  As a result of the
> robbery that I committed, Quiktrip was not open for business for a period of time
> which affected interstate commerce.

Dkt. # 59 at 7.  Likewise, at his change of plea hearing, defendant stated that:

> THE DEFENDANT:   On October 20th, 2009, I robbed the QuikTrip store at 1443
> South Denver in Tulsa, Oklahoma, using a handgun.  I took
> money from the store by telling the employees to give me
> money from the register.  On the same day and during the
> QuikTrip robbery, I brandished a firearm while committing
> the robbery.

Dkt. # 73, at 24.

As to the Whataburger robbery, in his petition to enter a plea of guilty, defendant stated that:

> On July 4, 2011, I robbed the Whataburger restaurant at 1432 South Peoria Avenue
> in Tulsa, Oklahoma, using a firearm.  I took money from the store by telling
> employees to give me money from the register and the safe.  During the Whataburger
> robbery, I possessed a firearm in order to commit the robbery.

Dkt. # 57, at 3.  He stated that he wished to plead guilty to counts one, two, ten, and eleven of the

indictment, which includes the two counts dealing with the Whataburger robbery.  Id. at 3-4; Dkt.

# 2, at 11-12.  Defendant's plea agreement also stated that he was entering pleas of guilty to counts

ten and eleven of the indictment (the Whataburger robbery counts).  Dkt. # 59, at 1-2; Dkt. # 2, at

11-12.  At his change of plea hearing, defendant was specifically asked if he wished to plead guilty to counts ten and eleven of the indictment, and defendant plead guilty to those two counts.  Dkt. # 73, at 27.  In the plea agreement, defendant offered that:

> Additionally, on July 4, 2011, while in the Northern District of Oklahoma, I entered into the Whataburger restaurant, located at 1432 South Peoria, Tulsa, Oklahoma, and proceeded to make contact with employees.  I then demanded that the employees give me money from the cash register and safe.  In response to my demands, the employees gave me money which belonged to Whataburger.  While committing the robbery, I used and brandished a firearm in order to force employees to comply with my demands.  I understand that Whataburger is a business that sells items which have been transported through interstate commence [sic].  I obstructed Whataburger's ability to conduct business by committing the herein described robbery.  As a result of the robbery that I committed, Whataburger was not open for business for a period of time which further affected interstate commerce.

Dkt. # 59 at 7.  Likewise, at his change of plea hearing, defendant stated that:

> THE DEFENDANT:  . . . On July 4th, 2011, I robbed the Whataburger restaurant at 1432 South Peoria Avenue in Tulsa, Oklahoma, using a firearm.  I took money from the store by telling the employees to give me money from the register and safe.  During the Whataburger robbery, I possessed a firearm in order to commit the robbery.

Dkt. # 73, at 25.

None of the arguments offered by defendant as to why his plea was unknowing or involuntary is valid.  Defendant's plea agreement (Dkt. # 59), petition to enter a plea of guilty (Dkt. # 57), and plea colloquy (Dkt. # 73, at 7-27) establish that defendant's plea was knowingly and voluntarily made.  See United States v. Arias-Lopez, 533 F. App'x 824, 826 (10th Cir. 2013); United States v. Gigley, 213 F.3d 509, 517 (10th Cir. 2000).  Defendant's motion should be denied on this ground.

**B.  Defendant Was Competent to Enter a Plea of Guilty**

Defendant argues that he was incompetent to enter a plea of guilty.  Dkt. # 64, at 9.

Defendant alleges that he was "suffering from a severe mental illness" at the time of his plea.  Dkt.

# 83, at 4.  Defendant further alleges that the Court would not have accepted his plea if it had it

known that he was "being deliberately deprived of [his] psychotropic medication."  Id. at 21.[20]

"[C]ompetency claims can raise issues of both substantive and procedural due process."

Walker v. Att'y Gen., 167 F.3d 1339, 1343 (10th Cir. 1999).  "A procedural competency claim is

based upon a trial court's alleged failure to hold a competency hearing, or an adequate competency

hearing, while a substantive competency claim is founded on the allegation that an individual was

tried and convicted while, in fact, incompetent." McGregor v. Gibson, 248 F.3d 946, 952 (10th Cir.

2001) (en banc).  Defendant had a competency hearing (Dkt. # 25), and defendant has not alleged

that his competency hearing was inadequate.  Defendant is, therefore, raising a substantive

competency claim.

Defendant was substantively competent to enter his plea.  "The well-settled legal standard

for assessing competency is that the defendant must have 'sufficient present ability to consult with

his lawyer with a reasonable degree of rational understanding [and have] a rational as well as factual

understanding of the proceedings against him.'" United States v. Herrera, 481 F.3d 1266, 1272

(10th Cir. 2007) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)) (alteration in original).

 "[T]o succeed in stating a substantive incompetency claim, a petitioner must present evidence that

creates a real, substantial and legitimate doubt as to his competency to stand trial." Walker, 167

---

[20]     Defendant's claim that he was not mentally competent does not necessitate an evidentiary
hearing, because a mental competency hearing was held prior to defendant entering his plea.
See Eskridge v. United States, 443 F.2d 440, 442 (10th Cir. 1971).

F.3d at 1347 (quoting <u>Medina v. Singletary</u>, 59 F.3d 1095, 1106 (11th Cir. 1995)) (internal quotations marks omitted).  Prior to pleading guilty, defendant was found to be competent at a competency hearing, based on a medical evaluation report prepared by a forensic psychologist.  Dkt. ## 23, 25, 26.  Additionally, at the change of plea hearing, this Court found defendant to be competent:

> THE COURT:   It is the finding of the court in the case of United States v. Tristan Jon Wilson-Crisp, based upon defendant's admissions, demeanor and responsive answers to my questions, that the defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offenses.

Dkt. # 73, at 27.

Defendant argues that the Court would not have found him competent if it knew that he was not taking any medication.  However, the Court was aware, at the time of the plea hearing, that defendant was not taking medication.  Defendant's petition to enter a plea of guilty disclosed that he had not taken any medication in the past seven days.  Dkt. # 57, at 5.  At his change of plea hearing, defendant testified that he was not under the influence of any drug or medication.  Dkt. # 73, at 8.  The Court was well aware that defendant was not taking any medication when it found him to be competent.

Based on the competency evaluation, the competency hearing, defendant's petition to enter a plea of guilty, and defendant's admissions, demeanor and answers during the plea colloquy, this Court had ample evidence of defendant's competency, and defendant's competency was thoroughly

tested.  See United States v. Pinson, 584 F.3d 972, 975-976 (10th Cir. 2009).[21]  Defendant has produced no evidence calling this conclusion into question.  See id. at 976 (holding that, where the defendant has failed to produce evidence calling the court's conclusion that defendant was competent into question, the defendant fails to meet his burden of demonstrating a denial of his due process rights); see also United States v. Alford, 317 F. App'x 813, 816 (10th Cir. 2009) ("Because Mr. Alford has failed to establish a real, substantial, and legitimate doubt as to Mr. Alford's competency to enter the guilty plea, his substantive competency claim also fails."); United States v. Frierson, No. 08-6254, 2009 WL 766533, at *2 (10th Cir. Mar. 24, 2009) (holding that because a defendant had not identified "any evidence in the record that undermines the psychologist's opinions or the district court's conclusion regarding his competency" he did not meet his burden of showing his plea was not knowing and voluntary).  Defendant's motion should be denied on this ground.

## C.  Defense Counsel Was Not Constitutionally Ineffective

Defendant argues that Knorr was unconstitutionally ineffective.  Dkt. # 64, at 5.  He argues that Knorr failed to investigate whether others may have committed the robberies to which defendant confessed, that one charge in a prior state case involving the same activity was dismissed because a prosecution witness failed to appear, and the fact that defendant's confession was uncorroborated. Id.; Dkt. # 83, at 4.  He argues that Knorr failed to pursue substantial evidence of his innocence. Dkt. # 64 at 8.  He argues that Knorr should have presented evidence that his confession was involuntary and that he was susceptible to providing false confessions.  Id. at 5.  He also argues that

---

[21]      Additionally, Knorr believes that defendant "fully understood the difference between a plea of guilty and a trial, especially in terms of the possible penalties involved."  Dkt. # 81-1, at 1-2.

Knorr was ineffective because Knorr withdrew two motions and defendant's insanity defense without consulting defendant. Id. at 9. Defendant argues that there was no strategic basis for withdrawing his insanity defense. Id. at 18. He argues that counsel failed to alert the Court to his mental condition and to inform the Court that he was lying under oath. Id. at 21; Dkt. # 83, at 4; Dkt. # 97, at 4-5. Defendant argues that Knorr would not accept his collect telephone calls. Dkt. # 97, at 5.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). Where a defendant has plead guilty, his

30

counsel's deficient performance is prejudicial only if he can show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Jones v. Hartley, 366 F. App'x 964, 965 (10th Cir. 2010).

Defendant argues that he received ineffective assistance of counsel because of Knorr's alleged failure to investigate or pursue substantial evidence of defendant's innocence. Defendant argues that Knorr should have investigated the possibility that someone else committed the robberies. Dkt. # 64, at 5, 23-24. Defendant argues that Knorr should have investigated "substantial evidence [of] the robberies committed before July 4, 2011." Id. at 8. Defendant argues that Knorr should have investigated his competency. Id. at 9-10. Defendant argues that Knorr should have investigated whether his confession was voluntary and whether he was competent to enter a guilty plea. Id. at 24, 26. Defendant suggests that Knorr should have interviewed a Tulsa Police officer who investigated the QuikTrip robbery and a QuikTrip employee who witnessed the robbery. Dkt. # 96, at 8; Dkt. # 97, at 2. Defendant also suggests that Knorr should have investigated the proceedings against him in state court for the QuikTrip robbery. Dkt. # 97, at 3. Defendant argues that if he had investigated the proceedings, he would have discovered that the charges in state court were dismissed because a witness failed to appear. Id. Defendant also argues that Knorr should have investigated the fact that defendant's confession was uncorroborated. Dkt. # 64, at 5; Dkt. # 83, at 4.

The extent of Knorr's investigation was reasonable, and defendant has not met his burden of establishing that Knorr's conduct was unreasonable. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances,

31

applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. Knorr thoroughly investigated this case before advising defendant as to the merits of entering into a plea agreement. In his affidavit, Knorr states that, in investigating defendant's mental issues, he spoke with Fiagome (prior counsel), reviewed Fiagome's competency motion and the medical evaluation report, spoke with defendant, and arranged for a medical evaluation of defendant, to determine "if he met the legal test for being insane at the time of the commission of the offense." Dkt. # 81-1, at 3, 6. Knorr watched the video recording of defendant's confession several times. Id. at 3. Knorr discussed the robberies with defendant, including when they occurred, how much money was taken, and why they occurred. Id. at 4. Knorr was also aware "of surveillance videos and photos from the other robberies which depicted an individual fitting [defendant's] physical size" and reviewed the police reports for the robberies. Id.

Knorr did not believe that investigating the possibility that someone else had committed the robberies would be fruitful because defendant had confessed to the robberies and because Knorr believed defendant had committed the robberies "because the information he provided was corroborated by the [police's] investigations and could only have been known by someone who was involved in the robberies."[22] Id. at 4. Knorr's explanation demonstrates why it was reasonable for

---

[22]    Knorr also states that he believed that he would not be able to find evidence that someone else committed the robberies because defendant told him "that he had committed the robberies and explained in detail each of the robberies" and "never denied committing any of the robberies." Dkt. # 81-1, at 4. While the Court acknowledges that defendant states that he informed Knorr that he did not commit any of the robberies to which he confessed, and that Knorr knew he was innocent of the QuikTrip robbery (see Dkt. # 64, at 20; Dkt. # 97, at 3), defendant's position is belied by the record. See e.g., Dkt. # 57, at 3 (admitting to committing the robberies and stating that he is not innocent); Dkt. # 59, at 7-8 (admitting to committing the robberies); Dkt. # 73, at 10, 24-25 (affirming that he is pleading guilty because he is guilty and admitting to committing the robberies).

him to focus on negotiating a favorable plea agreement with the government, rather than wasting valuable resources investigating the possibility that someone else had committed the robberies (or otherwise investigate "substantial evidence" of the robberies). Defendant has failed to provide a compelling reason for why Knorr should have further investigated the possibility that someone else committed the robberies, given that defendant confessed to the police and that his discussion with Knorr corroborated his confession and divulged information that only the robberies' perpetrator would have known. Likewise, given defendant's confession, its corroboration, and his knowledge of details only the robber would have known, it was not unreasonable for Knorr to forego interviewing the QuikTrip witness and the investigating officer. This is especially true given that their observations and beliefs had been documented in the police reports.[23]

Contrary to defendant's assertion, Knorr did investigate defendant's competency; Knorr spoke with defendant's former counsel and reviewed his competency motion and the medical evaluation report. Additionally, Knorr would have been aware that defendant had already been declared competent following a hearing. Given that investigation, defendant has failed to demonstrate that Knorr performed deficiently in not further investigating defendant's competency. Likewise, defendant has failed to demonstrate why Knorr should have further investigated defendant's competency at the time of his confession, given the lack of evidence suggesting that

---

[23]     As the reports were written before defendant was a suspect, there is no reason to believe that they deliberately omitted information exculpating defendant.

defendant's competency status would have changed between the time of his confession and the time of his competency hearing.[24]

Knorr did not act unreasonably in failing to further investigate the dismissal of the state court proceedings against defendant.  Defendant's charges were dropped because of the failure of a witness to appear.  Dkt. # 97, at 3, 10.  The failure of a witness to appear does not suggest that investigating the proceeding would lead to the uncovering of evidence favorable to the defense, nor does it suggest that no evidence tied defendant to the crime.  Defendant has failed to provide any reason why Knorr should have believed investigating the proceeding would have been useful -- especially given the fact that defendant would have been able to inform him of the events of the proceeding -- and why his failure to investigate it was unreasonable.

Knorr did investigate whether defendant's confession was corroborated.  Knorr examined the police reports and determined that the police investigation corroborated defendant's confession and that, in his confession, defendant provided information that "could only have been known by

---

[24]    Alternatively, defendant may be arguing that Knorr should have investigated whether he was insane at the time of the alleged offenses.  Knorr did investigate defendant's sanity; he arranged for a psychological evaluation.  Although defendant argues that he was only seen for thirty-five minutes and that the psychologist did not perform any tests on him (Dkt. # 97, at 4), he admits that the psychologist visited him and asked him questions about his mental health (Dkt. # 64, at 20) and does not dispute that the psychologist "made behavioral observations . . . reviewed collateral documents and items of evidence including photos and videotapes of the robberies and the confession, and had a collateral interview with [defendant's] father" and found that defendant was sane (Dkt. # 81-1, at 6).  Nor has defendant disputed that the psychologist's written report was shared with him.  See id. Defendant has failed to show why Knorr's decision not to investigate further was unreasonable.

someone who was involved in the robberies." Dkt. # 81-1, at 4.[25]  Defendant has not shown that the extent of Knorr's investigation was unreasonable.  In investigating his case, Knorr acted at, or above, the level of a reasonably competent attorney in criminal cases.  Defendant's failure to investigate claim fails to satisfy the first prong of Strickland.

Defendant argues that Knorr should have presented evidence that his confession was involuntary and that he was susceptible to providing false confessions.  Defendant has not provided any evidence suggesting that his confession was involuntary.  As discussed supra, defendant was competent at the time of his change of plea hearing, and defendant has produced nothing to suggest that he was incompetent at the time of his confession.  Defendant has not produced anything suggesting that his confession was involuntary for any other reason, nor has defendant produced anything to suggest that he was actually susceptible to providing false confessions.  Knorr believes that the confessions were voluntary and that defendant was not susceptible to providing a false confession.  Dkt. # 81-1, at 3.  Defendant has failed to demonstrate that Knorr acted deficiently because he has failed to demonstrate what Knorr could have done differently.  This argument fails to satisfy the first prong of Strickland.

Defendant argues that Knorr was ineffective because he withdrew two previously filed motions, a motion to suppress statements (Dkt. # 29) and a motion to suppress identification (Dkt. # 30), and did not consult with defendant before doing so.  The motion to suppress statements was

---

[25]     Alternatively, defendant may be suggesting that Knorr acted unreasonably in allowing him to plead guilty when the only evidence against him was an uncorroborated confession.  This is unsupported by the record.  After reviewing the police reports, Knorr believed that defendant's confession was corroborated because "information he provided was corroborated by the [police's] investigations and could only have been known by someone who was involved in the robberies."  Dkt. # 81-1, at 4; see also Dkt. # 81, at 2-3 (describing how defendant's confession was corroborated).  Knorr did not act unreasonably in allowing defendant to plead guilty, given that defendant's confession was, in fact, corroborated.

withdrawn because it was moot. Dkt. # 45, at 1-2. An attorney for the United States represented to Knorr that the United States would not introduce at trial the statements the motion sought to suppress. Id. at 1. Defendant knew that the motion would be withdrawn because it was moot. Dkt. # 81-2, at 5.[26] Withdrawing a moot motion is in no way indicative of deficient performance. The withdrawal of the motion to suppress statements fails to satisfy the first prong of Strickland.

The motion to suppress identification was withdrawn because its viability was questionable. See Dkt. # 81-1, at 5. Defendant discussed the reasons for withdrawing the motion to suppress identification with Knorr and agreed to withdraw it. See Dkt. # 81-3, at 5; see also Dkt. # 81-1, at 5. Withdrawing a motion to suppress identification can represent a reasonable strategic decision. Pittman v. Warden, Pontiac Corr. Ctr., 960 F.2d 688, 691 (7th Cir. 1992); see also United States v. Chavez-Marquez, 66 F.3d 259, 262-63 (10th Cir. 1995) (holding that not filing a motion to suppress can be "a reasonable tactical decision"). In Chavez-Marquez, an attorney did not file a suppression motion because the defendant had consented to the search, presumably leading the attorney to believe that the motion was not viable. 66 F.3d at 262-263. Knorr's withdrawal of a motion that, after discussion with defendant, he believed was not viable is the same kind of reasonable decision. Defendant has failed to overcome the strong presumption that Knorr's withdrawal of the motion to suppress identification falls within the range of reasonable professional assistance. Knorr's withdrawal of the motion to suppress identification does not meet the first prong of Strickland.[27]

---

[26] Defendant admits that Knorr explained to him that the motion was moot, but argues that offering that explanation somehow constituted coercion. Dkt. # 97, at 4. Knorr's explanation was not coercive.

[27] Additionally, defendant has failed to show that he was prejudiced by the withdrawal of the motion to suppress identification. Without prejudice, the withdrawal of the motion would not satisfy the second prong of Strickland.

Defendant also argues that Knorr was ineffective for abandoning his insanity defense and for failing to consult defendant before abandoning the defense. Knorr reasserted defendant's notice of insanity defense shortly after he began to represent defendant. Dkt. # 36; see also Dkt. # 81, at 6. Defendant's insanity defense was not "abandoned" until he plead guilty. Knorr fully investigated the feasability of an insanity defense and determined that it would be futile. Dkt. # 81-1, at 6; see also Dkt. ## 40, 42, 43, 44.[28] Knorr was not ineffective in allowing defendant to "abandon" his insanity defense by pleading guilty.[29]

Defendant alleges that Knorr was ineffective because he failed to alert the Court to defendant's mental condition and to inform the Court that defendant was lying under oath. The Court was aware of defendant's mental condition. The Court had previously received a medical evaluation report (Dkt. # 23), which thoroughly analyzed defendant's mental state, and a competency hearing was held (Dkt. # 25). Defendant correctly states in his petition to enter a plea of guilty, which Knorr helped defendant prepare, that "No psychiatrist, physician or psychologist has ever found me to be mentally ill although I have been found to have suffered from depression and polysubstance abuse.. [sic]" Dkt. # 57, at 5. Knorr did not err by failing to inform the Court as to defendant's mental condition; he did inform the Court as to defendant's mental condition and the Court was aware of defendant's mental condition.

---

[28]   Defendant admits that his attorney arranged for a psychologist to visit him at the David L. Moss Criminal Justice Center. Dkt. # 64, at 20. He admits that the psychologist visited him and questioned him about his mental health. Id. However, he argues that the psychologist did not perform any psychological tests on him. Dkt. # 97, at 4.

[29]   Defendant was aware that he was abandoning his insanity defense by pleading guilty. See e.g., Dkt. # 59, at 2 ("The defendant understands that, by pleading guilty, the following constitutional rights will be relinquished: . . . the right to plead not guilty.").

Defendant states that he was lying under oath at his change of plea hearing when he testified that he had not been treated for, nor suffered from, any mental illness and that Knorr, knowing those statements to be untrue, failed to intervene. See e.g., Dkt. # 97, at 4-5. Defendant did not testify that he did not suffer from any mental illness (see Dkt. # 73, at 8), and, as such, defendant cannot show that he lied under oath at his change of plea hearing by testifying that he did not suffer from any mental illness. Defendant did testify that he had not been treated recently for any mental illness. See id. While defendant had been prescribed Risperdal and Trazadone while in jail (Dkt. # 23, at 6), those medications were discontinued shortly after defendant's mental evaluation. Dkt. # 64, at 19; see also Dkt. # 57, at 5. Defendant, therefore, was truthful when he testified that he had not been treated recently for a mental illness. Additionally, Knorr's remarks at the sentencing hearing make clear that he did not believe defendant had been treated for a mental illness. Dkt. # 74, at 5 ("[H]e has a history of mental illness[30] that's been discovered since he's been arrested through two different

---

[30]   Knorr's use of the phrase "mental illness" refers to defendant's diagnosis of major depressive disorder, recurrent, mild, in remission, and polysubstance abuse. See Dkt. # 23, at 11. Knorr did not mean that plaintiff was incompetent; Knorr believed defendant to be competent and informed the court as such. See Dkt. # 81-1, at 5. Knorr was aware that defendant was never diagnosed with a condition that would render him incompetent to stand trial. See Dkt. # 81-1, at 5 (evincing a knowledge of the medical evaluation report); Dkt. # 23, at 6, 19-21 (stating that defendant had never received mental health services prior to his arrest and determining that defendant was competent). Additionally, Knorr was aware that defendant had previously been found competent to stand trial and enter a plea of guilty. Dkt. # 81-1, at 5; Dkt. # 25, 26; Dkt. # 73, at 27. This is supported by defendant's petition to enter a plea of guilty, which states that defendant had not been found to be mentally ill, while noting that defendant had been diagnosed with depression, for which he had been treated, and polysubstance abuse. See Dkt. # 57, at 5 ("No psychiatrist, physician or psychologist has ever found me to be mentally ill although I have been found to have suffered from depression and polysubstance abuse.. [sic]"). Nor did Knorr believe that defendant, at the time of his offenses, had an "inability to comprehend the nature or quality of criminal behavior or the inability to recognize the wrongfulness of his criminal behavior" or that there was a basis for rasing a defense of insanity at trial. Dkt. # 81-1, at 6; see also Dkt. # 57, at 8.

diagnoses, and they have gone untreated until the time of his arrest.  And, even then, it wasn't so much treatment as diagnosis . . . .").  The record does not suggest that defendant lied under oath or that Knorr failed to inform the Court that defendant was being untruthful.

Defendant argues that Knorr was ineffective because he would not accept defendant's collect telephone calls.  An allegation that an attorney failed to accept collect calls is insufficient, without more, to state a claim for ineffective assistance of counsel.  See United States v. Kitchens, Nos. 5:98-CV-25, 5:95-CR-12-1, 2000 WL 329352, at *1 (5th Cir. Mar. 23, 2000) (per curiam).

Defendant's argument that Knorr was ineffective is meritless.  Defendant's § 2255 motion should be denied on this ground.

### D. Defendant's Conviction Was Not Based Upon an Extrajudicial Uncorroborated Confession

Defendant argues that his conviction was based only on an uncorroborated confession[31] and that a conviction cannot rest solely on an uncorroborated confession.  Dkt. # 64, at 5.[32]  Defendant also argues that, because of his mental illness, that confession was involuntary.  Id. at 24.  Defendant misstates the rule.  A conviction may not be based on an "extrajudicial uncorroborated confession."

---

[31]     Defendant argues that:

> There was absolutely no critical physical evidence linking [defendant] to the crimes; no DNA analysis evidence linking [defendant] to a mask found at the scene of a robbery [defendant] confessed to committing; no eyewitness accounts linking [defendant] to the robberies he confessed to committing; no fingerprint evidence, or collaborating [sic] evidence linking [defendant] to the robberies to support the prosecution case . . . .

Dkt. # 64, at 8.

[32]     Alternatively, defendant's argument could be construed as arguing that his plea did not have a sufficient factual basis.  There must be a factual basis for a plea of guilty.  Fed. R. Crim. P. 11(b)(3).  Defendant's allocution during the change of plea hearing provided sufficient factual basis for defendant's guilty plea.  See Dkt. # 59, at 7-8.

United States v. Thayer, 32 F. App'x 498, 503 (10th Cir. 2002); see also United States v. Charpentier, 438 F.2d 721, 724 (10th Cir. 1971).  By entering a plea of guilty -- which, as discussed supra, defendant was competent to enter -- defendant confessed to the charged offenses in the context of a judicial proceeding.  His confession was not extrajudicial, and the rule defendant cites is not applicable.  Defendant's motion should be denied on this ground.[33]

**E.  Defendant's Motion for an Evidentiary Hearing**

Defendant has requested an evidentiary hearing to resolve factual disputes concerning his ineffective assistance of counsel claim.  Dkt. # 99.  If defendant's claim of ineffective assistance of counsel is resolvable solely on the basis of the existing record, no evidentiary hearing is necessary.  See United States v. Prince, 530 F. App'x 838, 838-39 (10th Cir. 2013); United States v. Lopez, 100 F.3d 113, 121 (10th Cir. 1996).  Because defendant's motion and the files and records of the case "conclusively show that defendant is entitled to no relief," no evidentiary hearing is necessary.  See 28 U.S.C. § 2255(b); United States v. Strasser, 502 F. App'x 736, 740 (10th Cir. 2012); see also United States v. Galloway, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (en banc).[34]  Defendant's request for an evidentiary hearing should be denied.[35]

---

[33]  Additionally, defendant's confession was corroborated by the police reports for the robberies.  See Dkt. # 81-1, at 4; Dkt. # 81, at 2-3.  Likewise, there is no evidence in the record to suggest defendant's confession was involuntary due to mental illness.  Knorr does not believe, based upon defendant's medical evaluation report and the psychological examination he commissioned, that defendant's confession was false and due to mental illness.  Dkt. # 81-1, at 3.

[34]  Additionally, defendant's allegations are general and conclusory.  See United States v. Glaria-Ramirez, No. 12-8078, 2013 WL 6851109, at *4 (10th Cir. Dec. 31, 2013).

[35]  This conclusion is supported by defendant's assertion that "[t]he evidence in this action is crystal clear."  Dkt. # 99, at 2.

## F.  Defendant's Request for Appointed Counsel Is Denied

Defendant requests that counsel be appointed, pursuant to 18 U.S.C. § 3006A(a)(2)(B).  Dkt. # 64, at 13.  Section 3006(a)(2)(B) provides that "representation may be provided for any financially eligible person who . . . is seeking relief under section . . . 2255 of title 28" if "the interests of justice so require."  Id.[36]  Defendant's claims have been fully briefed, and the record demonstrates, as discussed supra, that defendant is not entitled to relief.  This Court finds that the interests of justice do not require that counsel be appointed to represent defendant.  Defendant's request is denied.

## G.  Defendant's Motion Requesting In Camera Review of Grand Jury Minutes by the Court

Defendant argues in his motion requesting in camera review of the grand jury minutes that, if the only evidence presented to the grand jury relating to the QuikTrip robbery was defendant's confession -- which defendant believes was the case --, then there was insufficient evidence to support a finding of probable cause to indict defendant on counts related to the QuikTrip robbery.  Dkt. # 98, at 2-3.  Neither defendant's § 2255 motion, nor either of his supplements, argued that the grand jury's indictment was deficient.  See Dkt. ## 64, 77, 83.[37]  Defendant has not provided any other reason why the minutes should be reviewed.  See Dkt. # 98.  Because defendant has not

---

[36]    Rule 8(c) of the Rules Governing Section 2255 Proceedings requires that counsel be appointed if an evidentiary hearing is warranted.  However, as discussed supra, no evidentiary hearing is required to resolve defendant's § 2255 motion.

[37]    Defendant's reply, filed on August 19, 2013, does state defendant's belief that the only evidence presented to the grand jury was defendant's confession.  Dkt. # 96, at 6.

demonstrated how reviewing the minutes would support his supplemented § 2255 motion, defendant's motion should be denied.[38]

## H.  Defendant's Motion To Compel Judgment

Defendant's motion to compel judgment is not a model of clarity.  See generally Dkt. # 104. The motion appears to request the Court to promptly resolve defendant's § 2255 motion, and the Court shall construe it as such.  As this opinion and order fully resolves defendant's § 2255 motion, defendant's motion to compel judgment is moot.

## III.

Rule 11 of the Rules Governing Section 2255 Proceedings instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."   A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).  After considering the record in this case, the Court concludes that a certificate of appealability should not issue, as defendant has not made a substantial showing of the denial of a constitutional right.  The record is devoid of any

---

[38]     Additionally, defendant's guilty plea waived his ability to challenge whether the indictment was supported by probable cause.  See Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").

authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.

**IT IS THEREFORE ORDERED** that defendant Tristan Jon Wilson-Crisp's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Dkt. # 64) is **denied**.  A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that a certificate of appealability is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion Requesting In Camera Review of Grand Jury Minutes by the Court (Dkt. # 98) is **denied**.

**IT IS FURTHER ORDERED** Defendant's Motion Requesting an Evidentiary Hearing on Claim of Ineffective Assistance of Counsel (Dkt. # 99) is **denied**.

**IT IS FURTHER ORDERED** that defendant's Motion to Compel Judgement (Dkt. # 104) is **moot**.

**DATED** this 15th day of April, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE